## HARTMAN *against* STAHL.

### IN ERROR.

When under the act of the 20th *March*, 1810, "regulating arbitrations," one of several defendants enters an appeal from the award of arbitrators, takes the oath, and enters into a recognizance with bail in his own name only, it is but an appeal for one, and amounts to a severance, as much as if the co-defendants had come into Court and disclaimed the appeal.

Nor will an amendment be permitted, so as to make it an appeal for all the defendants, upon *parol testimony* that it was the intention to appeal for *all*.

By the return of the sheriff of a sale of land, and the acknowledgment of the deed, the title to the land is vested in the purchaser, and the sheriff becomes fixed for the amount bid.

The acknowledgment of the sheriff's deed is not conclusive evidence of delivery, but taken in connection with the fact of possession of the land being taken by the vendee, and continued, it is a strong proof of it.

When land has been sold upon execution by a sheriff who returned the sale and acknowledged the deed, but retained it as security for the payment of a part of the purchase money, and the vendee took possession of the land which was afterwards purchased as his property at sheriff's sale, and the second vendee brought an ejectment against one who did not show title, and on the trial of the ejectment the plaintiff paid the balance due the sheriff, (who was then out of office) and obtained the deed, which he gave in evidence, it was held that the plaintiff was entitled to recover.

By the payment of a large portion of the purchase money, and the delivery of possession, the sheriff's vendee requires an interest in the land, which, although it may not amount to a legal title, is subject to execution and sale, under which possession may be recovered from one who shews no title.

In ejectment by a sheriff's vendee, a judgment in favor of the vendee, against the defendant, as whose property the land was sold, is pertinent testimony, because it shows the manner in which the sheriff was paid for the land.

WRIT of Error to the Court of Common Pleas of Franklin county.

In that Court it was an action of ejectment, by *Joseph Stahl*, against *Elizabeth Hartman*, *Mary Brokins* and *William Hosack*, for a tract of land claimed by the plaintiff under a sheriff's sale. The cause was arbitrated under the act of assembly of the 20th March, 1810, and an award having been made in favor of the plaintiff, *Elizabeth Hartman*, one of the defendants only entered an appeal, took the oath required, and entered into the recognizance to prosecute the appeal with effect, &c.

The counsel for the defendants moved the Court "to amend the appeal so as to make *Mary Brokins* a party thereto, and that the jury may be sworn between the plaintiff, and *Mary Brokins* and *Elizabeth Hartman*." And on motion the following evidence was given.

"*James Dunlop* and *Elizabeth Hartman*, upon their solemn

(Hartman *v.* Stahl.)

oath, duly administered, did depose and say that the appeal in this case was intended for the benefit of *Elizabeth Hartman* and *Mary Brokins*, and was then considered as an appeal for both. The recognizance was not read, or but carelessly looked over, and was drawn by the clerk without any instructions. Both defendants alluded to, claim under the same title, and make the same defence. It was thought at the time of appeal that the appeal was for both, and both of them have attended the trial. *Mary Brokins* was not in at the time of the appeal. *Miss Hartman* had procured some one to be security on the appeal, and it was signed by deponents in haste, and at the time of engagement in other business."

"*Jasper E. Brady*, Esq. being duly sworn, according to law, doth depose and say that he drew up the recognizance taken on the appeal in this case. That to the best of his knowledge nothing was said of *Mary Brokins*, nor her name mentioned as he recollects. That *Elizabeth Hartman* offered as her security a man from Bedford county, on the appeal, whom he refused to take. That it was his practice to read any recognizance he took in the office, though he does not remember particularly to have read this one, that neither *Mary Brokens* nor *William Hosack, jr.*, were present, and that he was then acting as clerk in the prothonotary's office," &c.

The Court over-ruled the motion, and directed that the suit should proceed as to *Elizabeth Hartman* alone ; to the opinion of the court the defendants excepted, and the Court sealed a bill of exceptions, which was assigned for error here.

The plaintiff having given testimony to show title to the land in dispute in one *Orbison*, gave in evidence the record of a judgment of the Court of Common Pleas of Franklin county, against him, and the executions thereon, showing a levy on this land, and a return of the sheriff that he had sold it to *John Hetich* at $410: he then offered in evidence a judgment in the same Court in favor of *John Hetich*, against *Orbison's* administrator, to January term 1818, to show that the amount bid by *Hetich* at the Sheriff's sale was covered by the amount due him out of the estate of *Orbison*. This evidence was objected to, but admitted by the Court, and the bill of exceptions to the admission of this evidence was also assigned for error here.

It was admitted that the sheriff who made the sale, *Mr. Snider*, had executed a deed to *Hetich*, and duly acknowledged it on the 29th April, 1829, of which a record was made. That *Hetich* was entitled to the sum of $331 21, upon his judgment, out of the money raised by the sale ; the sheriff claimed the difference between this sum and the amount of his bid, and retained the deed until this difference should be paid ; and it was still in his

(*Hartman v. Stahl.*)

possession during the trial. The sheriff brought a suit to compel payment, which was still pending. *Hetich* had told the sheriff to go on, and acknowledge the deed, and he would have the money ready, he however died insolvent, without having paid this money to the Sheriff, who frequently demanded it.

It was in proof that *Hetich* had taken possession of the land sold to him, and had sold a part of it. The deed having been obtained from the sheriff during the progress of the trial, at this stage of the cause was offered in evidence, and objected to, but admitted by the Court, who sealed another bill of exceptions, which formed the third error assigned.

*Stahl,* the plaintiff, who claimed the land, under sheriff's sale and deed of it, as property of *Hetich,* had notice, at the time he purchased, that the deed to *Hetich* had not been delivered, and would not be, without payment of the balance of the purchase money due by him.

*J. Chambers* for the plaintiff in error.

The appeal from the award of arbitrators in this case was entered by *Elizabeth Hartman,* and the appeal and recognizance is in her own name. It is not the practice in the county of Franklin to reduce the affidavit of the party appealing from the award of arbitrators, to writing; a memorandum only is made on the record, that the appellant took the oath according to law. This was done here. He contended that this appeal inured to the use of all the defendants, unless they came into Court and disavowed the appeal. The Court will make every presumption to secure a trial by jury, and to sustain for this purpose an appeal from the award of arbitrators under this act of assembly. *Jones* v. *Badger,* 5 *Bin.* 461.

Unless a written agreement that a party shall not appeal, be made part of the record, the Court will allow the appeal, and this in favor of the trial by jury.

And where an appeal is taken by one of two defendants for both, and the other come into Court and disavows the appeal; the case *pro forma* should still proceed in the name of both. *Reed* v. *Garvin's executors,* 7 *Serg. & Rawle,* 354.

So if one of several defendants make the the affidavit for the appeal, and the recognizance be for all the defendants, the appeal will stand for all, unless either of the defendants come into court and desire to be severed. *La Fitte* v. *La Fitte,* 2 *Serg. & Rawle,* 107. Defendants may sever, plaintiffs cannot. *Gallagher* v. *Jackson's executors,* 1 *Serg. & Rawle,* 492.

Where any act is for the benefit of third persons, the assent of

29

(Hartman *v.* Stahl.)

the person for whose benefit the act is, is presumed.    Thus when a deed is made the assent of the grantee is presumed.    *Com. D.* 273, *Fait A* 3.    And a ratification is as good as an original authority.

Here the appeal was for the benefit of all the defendants, whose consent will therefore be presumed, the appeal too has been ratified.

. But he argued that the Court should have permitted the recognizance to be amended.    It was the intention of *Elizabeth Hartman* to appeal for both, and this intention, by the misprison of the clerk, was not carried into effect.

The Court to effectuate the intention should have allowed the amendment.    The law which once provided as to the amendment of records has been much changed.    The Courts, relaxing the old, and inconvenient, and often unjust rule, suffer these amendments, so that the intention of the parties may be carried into effect, and this too by matter *dehors* the record.    As in case of a judgment taken against two, one being dead, the Court will allow the record to be amended by striking out the name of the dead man.

. 2d.   The record of the judgment, *Hetich* v. *Orbison* was irrelevant.    It was not material to show that *Hetich* was entitled to the money, and there was nothing in the previous evidence to show its connection with the cause.    It was not evidence then at this stage of the cause at all events, and therefore was erroneously received.    *Weidler* v. *the Farmers' Bank of Lancaster,* 11 *Serg. & Rawle,* 134.    And it is a just and wise maxim of the law, that nothing irrelevant to the issue, should be received in evidence.    *Foster* v. *Shaw,* 7 *Serg. & Rawle,* 156, 161.

3d.   The sheriff's deed was invalid, as it had never been delivered, at all events, until after suit brought, and upon the trial of the cause, when it was too late for the plaintiff to acquire a title to sustain his action.     .

The sheriff makes a deed by virtue of an act of assembly, the provisions of which must be strictly pursued.

A sale at auction by the sheriff does not divest the estate of the debtor, unless the purchase money is paid, and *a deed delivered.* The actual delivery of the deed is essential.   *Catlin* v. *Jackson,* 8 *Johns. Rep* 406.    Same case 2 *Johns. Rep.* 248.

The acknowledgment of the deed has the effect of only dispensing with the evidence of the execution, and does not prove the delivery.    And it does not necessarily follow, that, because it has been acknowledged, and a minute made of it on the record, that the deed had been delivered to the purchaser.   *Lodge* v. *Bearier,* 16 *Serg. & Rawle,* 297,

(Hartman *v.* Stahl.)

The sheriff is bound by the act of assembly to "*give the buyer a deed,* duly executed and acknowledged in Court." *Act of* 1705, §4. *Purdon's D. T. Execution,* 265.

Possession cannot be obtained in the summary mode provided by the act of assembly without the deed. *Act of* 6*th April,* 1802, §1. *Purdon T. sheriff's sales and deeds,* 760.

At common law a deed has no validity until it be delivered. 4 *Com. D. T. Fait G.* 296, *Id. A.* 273, 275.

The recording of a deed is no delivery of it, at best it is merely evidence of delivery. *Chess* v. *Chess,* 1 *Penna. Rep.* 43. And here it was admitted that it had. not been delivered, but that it was retained by the sheriff until after the trial had commenced. The mere sale of the land by the sheriff gives no title to the purchaser, but all things required by the act of assembly must be done, to vest the title.

The sheriff has a right to demand payment of the purchase money before he tenders a deed acknowledged. *Hart's administrators* y. *Greenough,* 7 *Serg. & Rawle,* 197.

But here the deed was, if delivered at all, delivered after the suit brought, and after the sheriff was out of office. He contended that after the sheriff was out of office he could not make a deed. It must be signed, sealed and delivered by the sheriff, and after he is out of office he ceases to be a sheriff, and to make a deed, upon a sale made by him when in office, requires the order of the Court under the acts of assembly. *Hawk* v. *Stouch,* 5 *Serg. & Rawle,* 157.

The Court declined hearing *Crawford* who was of counsel with the defendant in error.

*Dunlop* on the same side.

1. When one of two defendants takes an appeal without naming his co-defendant, the Court would construe the act liberally, and consider it an appeal, unless the other defendant disclaim the appeal.

But if the appeal were intended for all, the intention of the parties should be effected, either by considering it an appeal for all, or permitting an amendment of the recognizance to conform to it.

This Court has decided that when upon appeal from the judgment of a justice of the peace, the recognizance is defectively taken, an amendment of the recognizance shall be permitted to sustain the appeal.

The cases are parallel, and the amendment should have been allowed here.

(Hartman *v.* Stahl.)

In *Hunt* v. *Rous.* 8 *Wheat.* 174, the instrument which had been drawn between the parties did not effectuate their intention, and the Supreme Court of the United States·gave the party relief, although there had been no mistake of the scriveners, who had drawn the instrument in accordance with the direction of the parties; but the parties were mistaken in the instrument, it was not calculated to give effect to their intention. A party should never be deprived of his right by the blunder of his counsel or an officer of the Court.

But the plaintiff had acquiesced in the appeal as an appeal for all the defendants. His counsel gave notice of trial to the "defendants or *their* attorney," and he could not afterwards deny that all the defendants were *recti in Curia*.

2. After showing the judgment and execution upon which the land had been sold to *Hetich*, the plaintiff should have shown the sheriff's deed to *Hetich*, under whom he claims; but he offered no proof of such deed, but a judgment in favour of *Hetich* against *Orbison*, as whose property the land had been sold. The plaintiff's ejectment was not upon an equitable title in a case where such title will be sufficient to sustain the action, but his suit was upon a strictly legal title; to which the sheriff's deed was essential.

To show the payment of the purchase money, or the judgment upon which he might perhaps retain it, was immaterial, without the deed it could not avail the plaintiff, and the deed was sufficient without this evidence. Nor did they offer to follow up this evidence by the deed; if they had it might perhaps have been evidence. He contended therefore that this judgment was not redundant but immaterial evidence, and should not have been received.

3. Could the plaintiff recover without a title? Without the sheriff's deed his title was incomplete, and this he had not obtained. But the plaintiff contends that writing, signing, sealing, and acknowledgment amount to a delivery of the deed. But although these may be evidence of a delivery, here it was rebutted by positive proof that the sheriff had not, and would not deliver the deed. The grantor takes no title before the delivery, it consummates the deed; any other doctrine would outrage the most fundamental principles of law.

If our act of assembly requires that the purchaser should have a deed, as against the defendant in the judgment to obtain possession from him, it surely requires that he should have it to recover against third persons who do not hold under the defendant.

In New York where the deed of the sheriff was not delivered, and he died, it was held that the purchaser had no title, but the

(Hartman *v.* Stahl.)

title remained in the defendant in the judgment. And in that state too, where the act of assembly does not in terms require a deed, the Court have held that under the statute of frauds and perjuries the sheriff must make the title, execute and deliver a deed: *a fortiori* under our acts of assembly in reference to sheriff's sales, which expressly require a deed, there must be a delivery.

The language of the act of assembly of the 2d April, 1803, *Purdon D. T. sheriff's sales,* 763, is "to make, execute, *deliver* and acknowledge any deed or deeds," and the several acts of assembly on this subject are to the same effect.

Until the purchaser holds the deed he is not the owner of the land, nor can he recover possession of it without it. *Hawk* v. *Stouch,* 5 *Serg. & Rawle,* 157.

An acknowledgment is not *expressly* required by acts of assembly, but is in force only from the acts in reference to sale of land upon execution; and it has been frequently held that neither the acknowledgment nor the recording of a deed was a delivery of it. And where a sheriff goes out of office, without executing a deed, the proper proceeding is, by an order under the act of the 23d *March,* 1764. But to warrant such deed, the order must be proved to have been made. *Espy's executors* v. *Lane,* 2 *Serg. & Rawle,* 53. The acknowledgment is a mere accessary, the delivery however is essential, it does not take effect from the former but from the latter. *Moorhead* v. *Pearce,* 2 *Yeates,* 456.

When a sheriff dies, or goes out of office before the execution of the deed, application must be made to the Court to have a deed acknowledged by his successor in office. And the deed is not executed until it is delivered. In practice the sheriff holds it as security until the purchase money is paid, and this security is obtained because by withholding the deed the title is withheld.

The opinion of the Court was delivered by

ROGERS, J.—If one of several defendants, make the affidavit required, by the act regulating arbitrations, and the recognizance be for all the defendants, the appeal will stand for all. But if either of them come into Court and desire to be severed, he may be severed, and the appeal will go on, in the name of the others. *La Fitte* v. *La Fitte, et al.* 2 *Serg. & Rawle,* 107. *Gallagher* v. *Jackson,* 1 *Serg. & Rawle,* 492. Further than this we cannot go. *Elizabeth Hartman* took the oath, and entered into the recognizance, with bail for herself alone, it therefore, is but an appeal for one, and amounts to a severance, as much so, as if her co-defendants had come into Court and disclaimed the appeal. It cannot be successfully contended, that the bail would be liable beyond the recognizance, which stipulates for one

(Hartman *v.* Stahl.)

of the defendants; without naming the others, or even referring to them, nor would it be in the power of the Court to extend the liability of the recognizance, beyond their agreement. The bail may be willing to be bound for *Elizabeth Hartman,* and very unwilling to answer for the act of others. It is alleged that the appeal is for the benefit of all, and that the consent of the other defendants will be presumed. If this were so yet it will not dispense with the provisions of the act of assembly which prescribes that an oath shall be taken, and a recognizance given, for all.

Here the oath was taken by one, and for one, and the recognizance binds her only, and her bail.'

But it is said that the Court should have permitted the defendants to amend the appeal. In order to amend, on the statutes, it is a general rule, there must be something to amend by. The writ may be amended by the *præcipe,* the declaration by the¦writ, &c. A general or special verdict has sometimes been amended by the memory or notes of a judge. And a special verdict, even by an affidavit, of what was proved at the trial. 1 *Tidd. Pr.* But no case, has been cited at the bar, when an appeal has been amended, or ·an affidavit of a party, or his counsel, that he *intended* to appeal, and particularly when it is in evidence, that no such intention, but the reverse, was mentioned, at the time the appeal was taken. It was the business of *Elizabeth Hartman,* and her counsel to see that the appeal was rightly taken, and it would not do to permit a mistake to be corrected on parol testimony. There must be something more certain, from which the amendment may be made. The experience of a century has shewn, that a rigid adherence to this rule, best comports with the safety of the suitors. Besides, had the amendment been allowed, it would have still been an appeal, with an oath, for *Elizabeth Hartman* alone, and without any recognizance binding the other defendants. It may be remarked, that *Elizabeth Hartman* does not say, in her affidavit, that she had any authority from the other defendants to appeal for them, nor have we an affidavit of *Mary Brokins,* that she gave her any such power. The plaintiff has a right to all the security arising from an oath for all, and a recognizance, with bail, binding all. If we should decide that this appeal was good, *Mary Brokins* would have the benefit of *it* without any oath taken by her, or for her, or without any recognizance being given, in which she was bound, or any person bound in the nature of special bail, that she would comply with the directions of the act.

In the year 1819, the land for which the ejectment is brought, was sold by *Jeremiah Snyder,* the then sheriff, as the property of *James Orbison.* After the sale, he acknowledged a deed, for the premises, to *John Hetich,* who was the highest, and best

(Hartman *v.* Stahl.)

bidder. The sum bid for the land, as appears by the sheriff's deed, was $410. At the time of the sale *Hetich* had a judgment against the administrator of *Orbison*, for $1,240, and on an apportionment of the assets, by auditors appointed for that purpose, it was admitted, that his share amounted to $331 21. After the acknowledgment of the deed, *Hetich* took possession of the property, sold part of it, and paid *Hosack*, one of the defendants, another part, who resided there, as his tenant for four years. *Snyder* retained the deed, because a balance of the purchase money, amounting to $898 remained unpaid. A judgment was obtained against *Hetich*, and on that judgment his interest was sold to the plaintiff in this ejectment. No title was shewn in the defendants.

It strikes me, that by the return of the sheriff, and the acknowledgment of the deed, the title was vested in *Hetich*.

The acknowledgment of the sheriff's deed is not conclusive evidence of delivery, but taken in connection with the fact, that the vendee of the sheriff took possession of the property, and continued in possession for four years, it is strong proof of it. *Chess* v. *Chess*, 1 *Penna. Rep.* 41. After the return of the sheriff, and the acknowledgment of the deed, the defendant in the execution could have no claim to the land, and it is plain, that the title must be either in him or in the sheriff's vendee. It cannot be in the sheriff. Nor do the heirs of *Orbison* pretend that they have any title. The sheriff, by his return, has fixed himself for the amount bid, nor is there any thing to rebut the presumption, that the administrators of *Orbison* have availed themselves of the liability of the sheriff. Indeed, it is certain, that the whole amount, for which the property was sold, went to the payment of *Orbison's* debts. Nor is the retention of the deed inconsistent with this view of the case. On the contrary, *Snyder* retains the deed to secure the balance of the purchase money, which he had paid, or for which he had become responsible. He claims no title to the land, but asserts, that as between him and his vendee he has a lien on the land in the nature of an equitable mortgage. If this be considered an equitable mortgage, this is a matter resting between the sheriff and his vendee, of which these persons cannot avail themselves.

It moreover appears, that on the trial, the sheriff received his money from the plaintiff, whereupon he delivered over to him the deed, which he had retained as a security for the money advanced by him.

Besides, by the payment of three-fourths of the purchase money, and the delivery of possession, *Hetich* acquired an interest in the land, although that interest did not amount to a legal title. And this interest is the subject of execution and sale. This

(Hartman *v.* Stahl.)

would entitle the plaintiff to possession, in opposition to those who shew no title.

The evidence of the record of the judgment, was pertinent testimony, because it shows the manner in which the sheriff was in part paid for the land sold to *Helich.*

Judgment affirmed.